**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Jane Doe 2, | |
| *Individually and as next friend on behalf of her minor child, Jane Doe 1.* | Case No.: 23-cv-50292 |
| Plaintiff, | Judge Iain D. Johnston |
| v. | |
| DeKalb Community Unit District 428, *et al.* | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

On April 14, 2023, staff at Huntley Middle School allegedly discovered the school's teaching assistant—Defendant Quinyatta Hutchinson—sexually abusing a student. Soon after, the Illinois State's Attorney's Office charged Hutchinson with several sex offenses, and a school parent initiated this civil suit, both on her own behalf and as next friend of the alleged victim, Plaintiff Jane Doe. Broadly, their Complaint claims that Hutchinson abused his position as a student teacher in DeKalb County School District to groom Doe into performing sex acts.

In addition to several claims against Hutchinson, Doe claims that Community Unit School District #428 ("the District") and several of its employees are liable for the sexual abuse, under the private rights of action in 42 U.S.C. § 1983 and 20 U.S.C. § 1681 (Title IX). Finally, under the Court's § 1367 supplemental jurisdiction, Doe

levies state law claims for Negligent Supervision, Intentional Infliction of Emotional Distress, and Battery.

Defendants Treveda Redmond, Shawn LaPlant, Matthew McIntyre, (collectively, the "Individual Defendants") and School District #428 move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, that motion is granted in part and denied in part.

## I. Background

### a. Allegations in Doe's Fourth Amended Complaint

In the 2022—2023 academic year, Defendant Quinyatta Hutchinson was a student teacher at Huntley Middle School. Fourth Am. Compl. (Dkt. 87) ¶ 17. In keeping with the county's student teaching program, the school assigned Defendant Shawn LaPlant to supervise Hutchinson full-time. *Id.* ¶¶ 28, 40. Hutchinson and LaPlant co-worked in Classroom 205, where they collaborated on lesson plans, instruction, and grading. *Id.* ¶ 28. As the year wore on, LaPlant gradually decreased supervision, leaving Hutchinson to teach sixth-grade math, essentially, alone. *Id.* ¶ 44. By the spring semester, Hutchinson spent entire days unsupervised in Classroom 205. *Id.*

Other school employees grew wary of Hutchinson, who—in their opinion—was overly familiar with the female students. *Id.* ¶ 7. Hutchinson escorted girls around campus, gave them his personal contact information, carried their books and backpacks, took selfies with them, and even sat with them in the cafeteria. *Id.* ¶¶ 6—

7, 45. What's more, several teachers spotted Hutchinson isolating female students in his classroom during lunch period. *Id.* ¶ 7.

Doe's Complaint isn't precise about who saw what,[1] but it paints Hutchinson's impropriety as "common knowledge" around campus. *Id.* The school principal, Defendant Treveda Redmond, watched Hutchinson on campus CCTV. *Id.* ¶¶ 7, 48. Defendant Matthew McIntyre (the school's track and field coach) knew Hutchinson isolated female students in his classroom at lunchtime. *Id.* ¶ 7(c). And, of course, LaPlant realized Hutchinson was sometimes one-on-one with female students in the classroom. *Id.* ¶ 40—42. So, essentially, Doe claims that the Defendants collectively saw Hutchinson develop intimate, personal relationships with female students.

Hutchinson paid particular attention to the Plaintiff Jane Doe, who was then a sixth-grade student. The Individual Defendants all knew that Hutchinson sometimes stayed on campus with Doe after hours. *Id.* ¶ 42. But no one ever reported

---

[1] The pleading is problematic in other ways, too. Here are just a few problems. First, the pleading is littered with typos. Dkt. 87, at ¶ 2 ("The plaintiffs generally claim that from August May 25, 2022 to April 14, 2023, Jane Doe 2 was subjected to [misconduct]."); ¶ 4 ("Snapchatand") ("inproper"); ¶ 7(p) ("took selfish in public"); ¶ 28 ("Nother Illinois"). The pleading refers to a "Portland, Illinois." *Id.* at ¶ 15. There is no "Portland, Illinois." There is a "Cortland, Illinois," which is in the general vicinity of Dekalb and Malta, Illinois.

Second, the pleading strangely purportedly contends to state a claim under the "5th Amendment's due process clause as applied to the State's [sic] through the 14th Amendment." *Id.* at ¶ 10. Obviously, the Fourteenth Amendment has its own due process clause that directly applies to the states.

Third, the pleading repeatedly and explicitly states that discovery is needed to plead the claims. *Id.* at ¶¶ 31, 33, 35, 36. But parties can't plead first, discover later. *Ass'n of Am. Physicians & Surgeons., Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) ("Right to it, *Twombly* bars the discover-first, plead-later approach that AAPS urges us to adopt."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

it to the District. *Id.* ¶ 47. For almost an entire school year, Hutchinson's questionable behavior went unquestioned. And, although school employees thought Hutchinson was acting strangely, they never intervened. *Id.*

After school on April 14, Hutchinson asked Coach McIntyre to excuse three girls from track practice to attend a remedial math program. *Id.* ¶ 51. McIntyre allowed Hutchinson to take Doe and two other students. *Id.* ¶ 52. Then, Hutchinson placed several female students in Classroom 205, while he and Doe proceeded to an unoccupied classroom. *Id.* ¶ 53. About an hour later, school employees allegedly found Hutchinson crouched behind a cabinet in the dark, with his pants around his ankles. *Id.* ¶ 55. Doe was huddled close by. *Id.*

School employees immediately called the police, who arrested Hutchinson on-site. *Id.* ¶¶ 14, 58. He now faces criminal charges for several sex offenses. *Id.* ¶ 14. The Court stayed all civil claims against him, pending the outcome of that prosecution, and the remaining defendants, Redmond, McIntyre, LaPlant, and the District, moved to dismiss only the counts against them. *Id.* ¶ 63.

Before getting any further, this Court thinks it prudent to distinguish which facts relate to which defendants. This is especially important, given Doe's Title IX claim, which raises a question of the Defendants' actual knowledge. In truth, Doe's allegations belong in two separate buckets: everything the Defendants knew as of April 14, and everything the Court knows now. For clarity's sake, the Court has so far only stated allegations that were common knowledge as to all Defendants. Those are just the tip of the iceberg, though.

Doe's remaining allegations are all unique to Hutchinson. In short, Doe alleges Hutchinson abused his position as a student teacher to groom her for a sexual relationship. He told Doe what she wanted to hear, claimed to be romantically interested in her, used terms of endearment, took photographs with her, doted on her, and allegedly exploited her trust and inexperience. *Id.* ¶ 45. Ultimately, Doe alleges that Hutchinson manipulated Doe behind closed doors. *See id.*; *see* ¶ 44. Hutchinson asked Doe about her home life, both on campus and online (through Instagram, Snapchat, and text). *Id.* ¶ 45. He privately advised Doe on sexual relationships with her peers, then, eventually, encouraged her to explore her sexual urges with him. *Id.* Once Hutchinson had successfully groomed his victim, he kissed, sexted, and groped Doe repeatedly. *Id.* Doe also alleges that Hutchinson convinced her to allow oral sex and digital penetration. *Id.*

Doe's sexual abuse has understandably caused her depression, anxiety, fear, confusion, and anger. *Id.* ¶ 12. Doe struggles to sleep at night and frequently breaks down crying. *Id.* She is terrified of men, love, and sex. *Id.* Doe's mother also suffered injuries while trying to support her daughter: She paid for Doe's counselling sessions and suffers from severe grief and anxiety. *Id.* ¶ 14. On these allegations, Doe's mother sued Hutchinson, Redmond, LaPlant, McIntyre, and the District, both for her own injuries and as Doe's next friend.[2]

---

[2] Doe's Fourth Amended Complaint mischaracterizes this action as a suit by two plaintiffs when, in reality, Doe lacks capacity to sue on her own behalf. Doe is a minor, so only the Defendants and Doe's mother are proper parties to this case. *See T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997).

### b. New allegations in Response to Motion

In the response brief to the motion, Doe made numerous allegations for the first time. Those allegations included that LaPlant "witnessed sexual harassment, sexual grooming and sexual abuse or turned a blind eye to it." Pl.'s Resp. to Defs.' Mot. to Dismiss (Dkt. 100), 3. Moreover, the brief alleged that LaPlant "aided and abetted," and was "culpable for providing a hall pass so that Hutchinson could remove Jane Doe 2 from her regular schedule." *Id*. at 4. The response brief further alleged that LaPlant permitted Hutchinson and Doe to be alone in his classroom after instructional hours. *Id*. Additionally, for the first time in the response brief, Doe alleged that Amy Hager reported Hutchinson's behavior—including fraternizing with female students—at Huntley Middle School to an administrator. *Id*. at 7—8.

In their reply brief, the Defendants went apoplectic. According to the Defendants, Doe's inclusion of these allegations in the response brief was out-of-bounds:

> The Plaintiffs cannot raise new allegations in their Response brief to support the causes of action made in their Fourth Amended Complaint. They must rely on the facts as they are alleged in their Fourth Amended Complaint to comply with Rule 12(b)(6), which dictates a cause of action lives or dies based on the allegations made on the face of the complaint. Fed. R. Civ. P. 12(b)(6). Therefore, any allegations made by the Plaintiffs in their Response that were not made in their Fourth Amended Complaint should be disregarded by the Court.

> Dkt. 101, at 3.

But that's wrong. And it's been wrong for a long time. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("We have held that facts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency

of a complaint so long as they are consistent of the allegations in the complaint.'") (*quoting Guitierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)).

Having established that the Defendants are incorrect on this specific point doesn't mean that the Court must accept as true all of these allegations. And even if the Court accepts the allegations as true, this doesn't necessarily change the legal analysis of the various claims.

The Court doesn't accept as true the allegations that LaPlant "turned a blind eye" or that he "aided and abetted." Those are classic legal conclusions that the Court must discard. *Doe v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021) ("blind eye" is a legal conclusion); *Yaques v. Zhenzhen Lin*, No.1:23-cv-23963, 2024 U.S. Dist. LEXIS 98087, at *15 (S.D. Fla. May 31, 2024) ("aiding and abetting" is a legal conclusion); *Jones v. Speidell*, No. 1:16-cv-1335, 2017 U.S. Dist. LEXIS 74630, at *13 (E.D. Ca. May 16, 2017) ("turn a blind eye" is a legal conclusion). The same is true about the allegation that LaPlant is "culpable." That's a legal conclusion, too. *Conyers v. VA*, 22-1590, 2023 U.S. App. LEXIS 25973, at *3 (2d Cir. Oct. 2, 2023); *Ray v. Scott*, No. CV 08-2524, 2009 U.S. Dist. LEXIS 117096, at *9 (C.D. Cal. Sep. 23, 2009).

The new allegation contained in the Response about Hager is more complicated. The Fourth Amended Complaint initially alleged that:

> Teacher Amy Hager stated to investigating officers that Quinyatta Hutchison isolated female student [sic] from their regularly schedule [sic] activities the prior academic year at Malta Elementary School where Quinyatta Hutchinson was a volunteer teacher. . . Ms. Hager further stated that she and the other

7

teachers . . . went looking for the students because of their absences and that is when they were [sic] discovered them in the conference room eating. Ms. Hager stated the teachers were upset by the situation and that she complained to her administrator.

Dkt. 87, at ¶7(m). So, the takeaway from this paragraph is that the previous year (2021–2022) at *Malta Elementary School,* Hager saw Hutchinson engaged in behavior so inappropriate she notified "her administrator." Who that administrator was at Malta Elementary School during that academic year is unstated.

In the next paragraph, the Fourth Amended Complaint goes on to allege that between August 2022 and April 14, 2023—which would be the next academic year— Hager found Hutchinson and a student teacher in her classroom "taking selfies of themselves with female students in the classroom." Dkt. 87, at ¶7(n). Again, being so upset, Hager reported what she observed "to her administrator." *Id.* Left unsaid in this allegation is (a) whether this took place at Malta Elementary School or Huntley Middle School and (b) again, who the administrator was.

In the Response brief, Doe's counsel alleged a mashup of the Fourth Amended Complaint's allegations:

> Additionally, there were reports directly to administrators of Hutchinsons' [sic] improper grooming. Teacher Amy Hager reported Hutchinson's improper fraternization and isolation of female 6th graders, removing them from their scheduled classes, isolating them in a conference room and buying them lunch, while she was frantically searching for her missing student and finds [sic] them in the conference room. She was upset and told her school administrator. Mr. Hutchinson was doing his volunteer teaching at Ms. Hager's grade school. Ms. Hager was at Huntley Middle School in the 2022—2023 academic year. In the 2022 to 2023 school year, Hutchinson improperly came into Ms. Hager's classroom and was improperly fraternizing with female student [sic] and improperly taking selfies with the female student, both violations of separate and distinct school policies, both constituting sexual harassment and sexual

8

grooming. Ms. Hager was again upset and she informed the investigating officers she reported this incident to her administrator.

Dkt. 100, at 7—8.

The reasonable inferences to be drawn from the Response brief's mashup and the allegations in the Fourth Amended Complaint are the following:

- Hager worked at Malta Elementary School in the 2021–2022 academic year;

- Hutchinson also student taught at Malta that year;

- Hutchinson engaged in misconduct that was observed by Hager at Malta;

- Hager reported Hutchinson's misconduct at Malta to an administrator during that academic year;

- both Hager and Hutchinson moved from Malta Elementary School to Huntley Middle School in the 2022-2023 academic year;

- Hutchinson continued to engage in misconduct this next year at this different school;

- Hager observed this continuing misconduct that was now occurring at Huntley Middle School; and

- Hager was again so upset by what she observed that she reported her observations to "her administrator."

The Court will give Doe's counsel those inferences, as they are reasonable and at least somewhat consistent allegations.

But the critical allegations relate to the "administrator." Was the same person the administrator at each different school during the different academic years? The reasonable inference is that it was not the same person. Note the use of the word

9

"administrators." The use of a plural indicates that these were different people. And it would not be a reasonable inference that Principal Redmond also moved from Malta Elementary School to Huntley Middle School from the academic year of 2021—2022 to the academic year of 2022—2023. Doe's counsel said as much when making allegations about Hager and Hutchinson.

Also unsaid is the capacity and role of these administrators and what they did or didn't do with Hager's complaints. Schools possess all kinds of administrative staff members that have little, if any, supervisory functions. And just because some "administrator" is informed of alleged misconduct, certainly doesn't mean the Board was on notice.

Not to bury the lede, but the most critical question about the "administrator" is the identity of the person. This allegation would go to potential individual liability of Redmond as well as potential liability of the Board. But Doe's counsel flatly admits he doesn't know who the administrator is. Indeed, in the Response, he states, "Further discovery is needed to determine who the 'administrator' was." Dkt. 100, at 8. He then goes on to assert that a "reasonable inference is that it was Principal Treveda Redmond." *Id*. Unsurprisingly, Defendants hotly contest this point.

So, having gone through this whole process—which was made unnecessarily complicated and messy by Doe's counsel—the issue is simply this: Is it a reasonable inference that Hager's administrator was Redmond or would assuming Redmond was Hager's administrator be speculation? If it's the former, then the Court must accept the allegation as true. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d

10

806, 809 (7th Cir. 2019). If it's the latter, then the Court need not accept the allegation as true. *Ilustrata Servicos Design, Ltd. v. P'ships & Unincorporated Ass'ns*, No. 21-CV-05993, 2021 U.S. Dist. LEXIS 222353, at *3 (N.D. Ill. Nov. 18, 2021); *NFL Props. LLC v. P'ships & Unincorporated Ass'ns*, No. 21-CV-05522, 2021 U.S. Dist. LEXIS 206160, at *3 (N.D. Ill. Oct. 26, 2021).

The difference between an inference and speculation might be a fine distinction, but it is an important distinction. *Senner v. Northcentral Tech. Coll.*, 113 F.3d 750, 757 (7th Cir. 1997); *Rudolph v. Rubin*, 31 F. Supp. 2d 11081118 (S.D. Ind. 1999). Sometimes, the process necessary to draw a reasonable inference reaches far beyond the scope of the evidence, thereby resulting in speculation. *United States v. Article of Device*, 731 F.2d 1253, 1262 (7th Cir. 1984). So, the distinction often rests on the lack of probative facts to support a conclusion. *See Lavender v. Kurn*, 327 U.S. 645, 653 (1946); *Wisconsin Memorial Park Co. v. C.I.R.*, 255 F.2d 751, 753 (7th Cir. 1958) ("The difference between speculation and inference lies in the substantiality of the evidence constituting the premise."). A reasonable inference requires the existence of sufficient other facts to allow a logical conclusion that another fact is true. *Article of Device*, 731 F.2d at 1263.

It is speculation that Redmond was the "administrator" whom Hager complained to about Hutchinson. Even combining the allegations from the Fourth Amended Complaint with the Response, factual allegations are lacking to allow the Court to draw a reasonable inference that Hager complained about Hutchinson to Redmond. Sure, there's an allegation that Hager complained to "her administrator"

11

and that Redmond was the principal at Huntley Middle School at the time. But that's it. There are no connecting facts to allow for the inference that Redmond was the "administrator" to which Hager was referring. Only speculation allows for that conclusion.

What's more, common sense and experience indicates that Redmond was not the "administrator." A teacher doesn't call her principal "her administrator." Teachers specifically identify principals by the descriptor "principal" followed by a first or last name. Common life experience counsels that Hager would have referred to Redmond as "her principal." Principals sit at the apex of any school—everybody knows that, especially teachers. That's why they are referred to as "principal," not "administrator." The Court will not infer that the "administrator" referred to in the Fourth Amended Complaint and Response was Redmond. The Court can't engage in speculation.

## II.    Analysis

Under Rule 8, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co.*, 933 F.3d at 809.

12

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "But the proper question to ask is still 'could these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)). Importantly, on a motion to dismiss, the defendant bears of the burden of establishing the insufficiency of the complaint's allegations. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

### a. Federal claims

Doe filed Title IX and § 1983 claims against the District and the Individual Defendants because, in her view, the Defendants' failure to report Hutchinson to the District meaningfully contributed to her constitutional and federal statutory injuries.

#### i. Count XV: Title IX

Count XV contains Doe's only viable claim against the Individual Defendants: a Title IX claim against the District. Title IX states in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a claim for sexual harassment under Title IX, the plaintiff must plead: (1) she belongs to a protected group; (2) she experienced sex-based harassment; (3) the harassment was so pervasive or severe that it altered the conditions of her education; and (4)

school officials knew about the harassment while it was taking place. *Id.*; *see Mary M. v. North Lawrence Community Sch. Corp.*, 131 F.3d 1220, 1224 (7th Cir. 1997).[3]

When, as in this case, the plaintiff proceeds on a theory of teacher misconduct, damages are only available if "an official of the school district who at a minimum has authority to institute corrective measures . . . has actual knowledge of the [misconduct] and fails to adequately respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Critically, supervisors are only charged with knowledge of "the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014).

Between her Fourth Amended Complaint and the properly pled allegations in her Response, Doe plausibly suggests that LaPlant had actual knowledge Hutchinson was sexually abusing Doe. Doe's Response states that LaPlant "either witnessed sexual harassment, sexual grooming, and sexual abuse or turned a blind eye to it." Dkt. 100, at 3. And that allegation is consistent with those of her Fourth Amended Complaint. Specifically, Doe's Complaint states that LaPlant and Hutchinson shared a designated classroom, and that LaPlant was, at times, physically present in Classroom 205 when Hutchinson removed female students from their regularly scheduled programming. Dkt. 87, at ¶ 7(a). So, that allegation is properly before the Court.

---

[3] The District does not contest that it receives federal funding, which is a requirement for a Title IX claim. *Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 810 (7th Cir. 2021).

Of course, not all allegations are created equal. It's well-established that courts must disregard a plaintiff's conclusory allegations in deciding motions to dismiss. What's less clear, though, is the distinction between factual findings and legal conclusions. *Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp. 2d 993, 995 n.2 (S.D. Ind. 2000); *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (2004) ("Often the distinction between fact and legal conclusion is blurred.").

Sometimes, the difference is unmistakable. For instance, Doe offers legal conclusions about what constitutes grooming. Strangely enough, her definition includes a teacher allowing a student to walk down the hallways "for no educational purpose and without a parent's consent." Dkt. 100, at 9. But the Court isn't bound by the Parties' cursory articulations of law. And for good reason: Those representations are biased, conclusory, and—as seen here—sometimes wholly inaccurate. Accordingly, the Court declines to consider Doe's legal conclusion that LaPlant witnessed any actions that constitute sexual abuse or grooming.

Whether Doe plausibly suggested that LaPlant witnessed Hutchinson "sexually harassing" Doe is a closer question, though. Sexual harassment does have a legal definition, as do grooming and sexual abuse. But, unlike the others, sexual harassment has taken on a broader definition through common usage. For instance, workplace codes of conduct supply their own definitions of sexual harassment. And, unlike the other two, it's not a term of art so much as a collective understanding of appropriate behavior in society. In that sense, this allegation is separate and apart

15

from Doe's legal conclusions about what constitutes sexual abuse and sexual grooming.

On that razor-thin distinction—paired with this Court's obligation to read complaints in the light most favorable to the plaintiff on a motion to dismiss—the Court accepts Doe's allegation that LaPlant turned a blind eye to his personal observations that Hutchinson was sexually harassing Doe. In fact, that allegation is bolstered by other well-plead allegations in the Complaint. LaPlant routinely observed Hutchinson's overfamiliarity with female students and still elected to decrease supervision. *See* Dkt. 87, at ¶ 7(a). What's more, LaPlant was sometimes present in the classroom when Hutchinson isolated students. *Id.* So, on counsel's representation that LaPlant witnessed Doe's sexual harassment, the Court finds it reasonable to infer that some of that abuse occurred during lunch period in Classroom 205.

It's also reasonable to believes that LaPlant had the authority to institute corrective measures regarding Hutchinson's abuse. Minus the thorny issue of actual knowledge, the Defendants concede that point. Dkt. 100, at 12. As a full-time teacher at Huntley and a participant in its student teaching program, it is only reasonable to infer that LaPlant was responsible for supervising Hutchinson—a student teacher— and Doe—a sixth-grade student. If proven, his failure to act in light of actual knowledge of sexual abuse would give rise to liability on behalf of the District. So, Doe's Title IX claim—and only her Title IX claim—survives the Defendants' Motion to Dismiss.

16

ii. Count I: *Monell*

Next, Count I fails to state a § 1983 claim against the District. 42 U.S.C. § 1983 "provides a remedy for violations of federal rights committed by persons acting under the color of state law." *First Midwest Bank Guardian of Estate of LaPorta v. Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). A school district, as a unit of local government, is a "person" for § 1983 purposes, but is only liable for "its own violations of the federal constitution and laws." *Id.*; *Juniel v. Park Forest-Chi. Heights School Dist. 163*, 176 F. Supp. 2d 842, 848 (N.D. Ill. 2001). "Note the qualifier: 'its own violations.'" *First Midwest Bank*, 988 F.3d at 986.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny, a plaintiff must "challenge conduct that is properly attributable" to the school district. *First Midwest Bank*, 988 F.3d at 986; see *Monell*, 436 U.S. at 690–91. Critically, § 1983 "does not incorporate the common-law doctrine of *respondeat superior*," so a school district "cannot be held liable for the constitutional torts of its employees and agents*." First Midwest Bank*, 988 F.3d at 986.

A *Monell* claim, as opposed to a § 1983 claim against an individual, "obviously entails elements" that are "not directly involved" in actions against an individual. *Medina v. Chi.*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000). A *Monell* claim "looks more broadly to the customs, policies, or practices that are alleged to contribute to the individual misconduct." *Cadiz v. Kruger*, No. 06 C 5463, 2007 U.S. Dist. LEXIS 88458 at *9 (N.D. Ill. Nov. 29, 2007). A "key" in "applying *Monell* and avoiding *respondeat superior* liability" is "distinguish[ing] between the isolated wrongdoing of one or a few

17

rogue employees and other, more widespread practices." *Howell v. Wexford Health Servs., Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

### 1. Widespread custom or practice

To state a claim under *Monell*, a plaintiff must plausibly suggest: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). These requirements "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quoting *Pembaur v. Cin.*, 475 U.S. 469, 479 (1986)).

When, as in this case, a plaintiff attempts to base her *Monell* claim on a widespread practice, her allegations must plausibly suggest that the practice is "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1998) (internal quotation omitted). That custom cannot be established "by proof alone of the single violation charged." *Id.*; *see Bonchek v. Nicolet Unified Sch. Dist.*, No. 19-CV-425-JPS, 2019 U.S. Dist. LEXIS 219788, at \*16 (E.D. Wis. Dec. 23, 2019) ("Allegations related to one offender . . . are simply not enough" to establish a widespread conduct.") (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)).

18

Indeed, Doe repeatedly alleges that the Individual Defendants, in fact, *violated* multiple District explicit policies by their actions and inactions. Dkt. 100, at 2, 5, 7, 9. So, under these circumstances, the only possible route for *Monell* liability is the existence of a custom or practice by the District to allow District employees to ignore the explicit policies that prohibited their actions and inactions. *See Warner v. City of Terre Haute, Ind.*, 30 F. Supp. 2d 1107, 1121 (S.D. Ind. 1998); *see also Bohanon v. City of Indianapolis*, 46 F.4th 669, 677 (7th Cir. 2022) (noting that an express policy decreases the likelihood that a pattern of similar incidents develops). Doe doesn't make these allegations. Instead, she makes contrary allegations.

In support of her *Monell* claim, Doe alleges that the Individual Defendants failed to report Hutchinson to the District for violating school policies. Dkt. 100, at 9. As pleaded, though, the Individual Defendants' failure to report Hutchinson is best described as happenstance—not permanent, well-settled, or widespread practice. Doe alleged the narrow practice of failing to report Hutchinson specifically (as opposed to failure to report *all* school employees who violated district policies).

As discussed at length already, Hager allegedly reported Hutchinson's behavior to an unidentified administrator. *Id.* at 8—9. And, likewise, Doe alleges that another employee promptly reported Hutchinson to the police. Dkt. 87, at ¶ 58. So, far from showing a widespread practice of failure to report, Doe's Fourth Amended Complaint alleges that Huntley employees reported Hutchinson's misconduct to administrators and police.

19

The Court need not ignore allegations that undermine a plaintiff's claim. *Slaney v. The Int'l Amateur Athletic Fed'n* 244 F.3d 580, 597 (7th Cir. 2001); *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993); *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). And Doe's remaining allegations do just that. Because the allegations of the Fourth Amended Complaint are ultimately inconsistent with alleging a widespread pattern or practice, Doe fails to state a Monell claim against the District.

### 2. Supervisory liability

In the light most favorable to Doe, in addition to the District's alleged liability for its employees' actions and inactions, Doe seems to allege supervisory liability against the Individual Defendants. That argument fails too. "Failure to control [one's subordinates] is not actionable at all absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it." *Lenard v. Argento,* 699 F.2d 874, 885 (7th Cir. 1983) (internal citations omitted). There lie the fatal words for Doe's *Monell* claim: encouraged or participated.

Though Doe sharply criticizes the Individual Defendants' failure to intervene, she never alleges that they participated in Hutchinson's sexual abuse or, even, that they encouraged Hutchinson to isolate Doe in the classroom. Rather, Doe repeatedly and wrongfully attributes Hutchinson's misconduct to the school's full-time employees. For instance, Doe alleges that the Individual Defendants "permitted" Hutchinson's misconduct, and that Coach McIntyre failed to stop Hutchinson from isolating Doe, when he "could have easily [intervened]." Dkt. 87, at 17; Dkt. 100, at

6. The Complaint further states that "instructors were upset by [Hutchinson's conduct], but they did not personally stop it from occurring." Dkt. 87, at 8.

Doe's allegations against LaPlant provide an even clearer example of the "non-allegations" at work in her pleadings. In Doe's words, LaPlant "chose not to report" Hutchinson for isolating students in the classroom. Dkt. 100, at 5. He "permitted" Hutchinson and Doe to be alone together; "permitted" Hutchinson to stay after school; was "personally present" in Classroom 205 when Hutchinson took students from their lunch period; and allowed Doe to enter the classroom during lunchtime. *Id.* at 4, 5, 2. These allegations suggest that the Individual Defendants may have been careless, but they don't suggest knowing participation or encouragement of a constitutional violation.

And one final note on the matter of encouragement or participation: Doe's Fourth Amended Complaint most likely pleads her out of court. About a month before the school discovered Hutchinson's abuse, LaPlant *discouraged* Hutchinson from isolating Doe in the classroom. *Id.* at 5; *see Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (a plaintiff risks pleading himself out of court if he "alleges facts showing that he isn't entitled to a judgment."); *see Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (pleading oneself out of court, a concept that pre-dates *Twombly* and *Iqbal*, survives those decisions). So, Doe fails to state any supervisory liability claims against the Individual Defendants.

iii.  Counts II—V: § 1983 claims against the Individual Defendants

Finally, qualified immunity bars Doe's § 1983 claims against the Individual Defendants.  Qualified immunity shields state officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).  Critically, plaintiffs bear the burden on both inquiries. *Ashcroft*, 563 U.S at 735.

When a plaintiff fails to carry that burden, the trial court is duty bound to dismiss her claim as barred under qualified immunity.  Often, that happens at the summary judgment stage but, in some cases, it happens much sooner.  *E.g., Schimandle v. DeKalb County Sheriff's Off.*, 114 F.4th 648, 651 (7th Cir. 2024) (qualified immunity "compel[led]" dismissal even before discovery started).  The Seventh Circuit has broadly explained that "dismissal under Rule 12(b)(6) on qualified immunity grounds may be inappropriate in many cases, [but] in some cases it is proper; indeed, we have reversed the denial of qualified immunity at the pleading stage where appropriate." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (internal citations omitted).  This Court acknowledges that dismissal under qualified immunity at the 12(b)(6) stage is somewhat unusual.  *See Roldan v. Stroud*,

22

52 F.4th 335, 337 (7th Cir. 2022). Equally unusual, though, is the near incoherence of Doe's Response and the complete failure to even attempt to meet her burden.[4]

Once the Defendants presented a qualified immunity argument in their Motion to Dismiss, Doe bore the burden of plausibly suggesting that she'd endured a clearly established violation. Instead, she stated briefly that state law doesn't excuse employees from following federal laws. If it sounds confusing in this Court's opinion, that's because it is. Doe summarily opposed the Defendants' qualified immunity argument without offering a single authority.

Tried as it might, this Court could make neither heads nor tails of Doe's cursory qualified immunity argument. And, ultimately, it "is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (internal quotations and citation omitted). This principle should not come as a surprise. As is readily apparent from the Court's Standing Orders (which all litigants are expected to be familiar with), a failure to respond to an argument independently supports dismissal. *See* Hon. Iain D. Johnston Standing

---

[4] Doe's entire argument on this point reads:

> Qualified immunity is not at all related to a state immunity statute providing immunity to a low ranking [sic] state actor acting under color of law which deprives someone of a federal constitutional right. A state immunity statute cannot immunize someone's actions which violate another's constitutional rights under the United States' Constitution and their right to pursue redress for said deprivations through §1983.

Dkt. 100, at 11.

Order, *Failure to Respond*. For that reason alone, Doe's federal § 1983 claims against the Individual Defendants are all dismissed on qualified immunity grounds.

Setting aside waiver principles, when confronted with the qualified immunity defense, Doe had to either identify a closely analogous case or show that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable public officials could have thought they were acting lawfully. *Jump v. Vill. of Shorewood*, 42 F.4th 782, 791-92 (7th Cir. 2022). As shown already, the incoherent Response does neither of these. Doe failed to cite an analogous case and never argued that the conduct was so egregious and unreasonable that a closely analogous case was unneeded.

Furthermore, the Court's independent research was unable to unearth a closely analogous case, and the Court doesn't believe the allegations against the Individual Defendants are sufficient to meet the extraordinary burden of showing egregious and unreasonable conduct that no reasonable teacher would think was lawful. No doubt what was discovered on April 14, 2023, is conduct that any reasonable person would know was unlawful—on lots of levels. But the allegations about what the Individual Defendants allegedly knew before that date aren't as clear cut. Those allegations appear—rightfully—to violate District policy, but that's not the same as being egregiously unlawful to all reasonable teachers. Doe's failure to provide a closely analogous case or argue that the conduct was so egregious and unreasonable is another basis to grant qualified immunity to the Individual Defendants.

### b. State law claims

Although Doe's § 1983 claims against the District and the Individual Defendants are dismissed, importantly, the Title IX claim against the District and one § 1983 claim against Hutchinson remain. Based on that, the Court proceeds to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Even under state law, though, the Court's analysis is relatively unchanged: Doe continues to ask the Court to invent and impose supervisory liability to inapposite claims.

### i. Counts XI—XIV: Negligent supervision

Doe's negligent supervision claims fail, as a matter of law, under the Illinois Governmental Employees Tort Immunity Act. The Tort Immunity Act precludes public officials from facing liability for decisions made as part of their public service. Importantly, the Act does not impose any new duties on public employees. It only grants immunities and defenses. 745 ILCS 10/1–101.1(a) (West 1998). *See In re Chi. Flood Litig.*, 176 Ill. 2d 179, 192 (Ill. 1997) ("governmental units are liable in tort on the same basis as private tortfeasors unless a tort immunity statute imposes conditions upon that liability"); *Vill. of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1096 (Ill. 2001) ("The existence of a duty and the existence of an immunity, therefore, are separate issues.").

School employees undoubtedly owe a duty of reasonable care to safeguard students under Illinois law. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Both the Seventh Circuit and the Supreme Court

acknowledge that schools have a duty to act on sexual harassment once they are put on notice. *Moore v. Freeport Cmty. Unit Sch. Dist. No. 145*, 570 F. Supp. 3d 601, 608 (N.D. Ill. 2021); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 824 (7th Cir. 2003). So, the remaining issue is whether Section 3—108 immunizes the Defendants from a breach of that duty, as the Defendants argue.

Under the Tort Immunity Act, a local public entity or employee may only be held liable for failure to supervise if it is "guilty of willful and wanton conduct in its supervision proximately causing the injury." 745 ILCS § 10/3–108(a). The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 2012). "A determination of willful and wanton conduct will be based on the facts of any given case." *Burke v. 12 Rothchild's Liquor Mart, Inc.*, 593 N.E.2d 522, 532 (Ill. 1992). But, broadly speaking, willful and wanton conduct is "remarkably similar" to that constituting deliberate indifference. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (cleaned up).[5]

What matters in determining whether a complaint adequately pleads willful and wanton misconduct is not a plaintiff's conclusory allegations, but whether the facts alleged plausibly support that conclusion. *See S.J. v. Persps. Charter Sch.*, 685

---

[5] *See also Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (describing deliberate indifference as "somewhere between the poles" of negligence and purpose or knowledge, roughly the equivalent of recklessness); *accord Sparks v. Starks*, 367 Ill.App.3d 834 (1st Dist. 2006) (describing willful and wanton conduct as an aggravated form of negligence, a "hybrid" between negligent and intentionally tortious conduct).

F. Supp. 2d 847, 858–59 (N.D. Ill. 2010) (dismissing a failure to supervise claim because the plaintiff offered "only labels and conclusions' that the conduct was willful and wanton, without the 'further factual enhancement' necessary to survive a motion to dismiss under Federal Rule of Civil Procedure 8.") (citing *Twombly*, 550 U.S. at 557).

So, the Court begins—as always—by disregarding the conclusory allegations in Doe's pleadings. *See Winfrey v. Chicago Park District*, 654 N.E.2d 508, 512 (Ill. App. Ct. 1995). Doe claims that the Defendants "were willful and wanton in their supervision of Jane Doe," that they "aided and abetted" Hutchinson's abuse, and that they were "deliberately indifferent" to her grooming. Dkt. 100, at 12, 4, 10.

Setting those labels aside, though, Doe's allegations suggest, at most, gross negligence, which the Illinois Tort Immunity Act bars completely. Doe's Fourth Amended Complaint generally alleges that the Defendants failed to monitor Hutchinson. But, critically, "[a]llegations of a failure to supervise student activities are not sufficient to state a cause of action for willful and wanton misconduct." *Holsapple v. Casey Community Unit School District C–1,* 510 N.E.2d 499, 500 (Ill. App. Ct. 1987); *see Henrich v. Libertyville High Sch.*, 712 N.E.2d 298, 302 (Ill. 1998), *as modified on denial of reh'g* (June 1, 1999) (plain language of section 3–108 of the Tort Immunity Act immunizes against a failure to supervise). Accordingly, Doe's negligent supervision claims are all dismissed.

ii. <u>Counts VI—X: IIED</u>

Turning to the intentional infliction of emotional distress, then, Doe fails to state claims against the Individual Defendants and the District.  To state a claim for IIED under Illinois law, a plaintiff must plausibly suggest that the defendants' conduct was extreme and outrageous, the defendants *intended* to inflict severe emotional harm or knew that the harm was highly likely to result, and that harm did, in fact, result from the conduct. *Motley v. United Airlines, Inc.,* No. 16 CV 6641, 2017 U.S. Dist. LEXIS 32619, *10 (N.D. Ill. Mar. 8, 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79-80 (Ill. 2003)).

To be clear, sexual abuse has no place in civilized society—least of all, in schools.  No one doubts that sexual abuse by a teacher inflicts severe harm on students, parents, and society at large.  That element is more than satisfied by the allegations in Doe's Fourth Amended Complaint.  The only issue is whether Doe plausibly suggested that the Individual Defendants *intended* to cause her and her mother harm.  She hasn't.

In fact, Doe neither alleges that the Defendants intentionally caused her suffering, nor pleads facts plausibly suggesting that they did.  Perhaps Doe's allegations against the Individual Defendants amount to negligent supervision (which is barred by the Tort Immunity Act), but, by definition, conduct that is negligent is not intentional. *See Pomaro v. Cmty. Consol. Sch. Dist. 21*, 662 N.E.2d 438, 440 (Ill. App. Ct. 1995) (taking a sliding scale approach to defining state of mind,

with intentional misconduct on one end of the spectrum and mere negligence on the other).

When pressed on the issue of whether the Defendants acted intentionally, moreover, Doe forfeits the point. She emphasizes the cruelty of Hutchinson's abuse, without identifying any other Defendant's role in it. So, once again, Doe's failure to respond to the Defendants' argument independently supports dismissal of her claims.[6]

### iii. Count XVII: Battery

Finally, even Doe's counsel acknowledges that her battery claim against the District is frivolous.[7] Although this Count is easily dismissed, the Court cautions counsel about the quality of his filings. Even at this early stage of litigation, Doe has repeatedly offered vague and conclusory allegations, misstatements of case law, and slipshod pleadings.[8] Perhaps Plaintiff's counsel believes he's saving time by serving

---

[6] Doe's mother also fails to state her own IIED claim. For the same reasons already given, Doe's allegations don't plausibly suggest that the Defendants contemplated and disregarded the risks that their conduct posed to her mother.

[7] "Plaintiff concdes [sic] plaintiff [sic] can locate no case law supporting an argument the District is vicariously liable for Quainyatta [sic] Hutchinson's batter [sic] of Jane Doe 2." Dkt. 100, at 14.

[8] Doe's Fourth Amended Complaint rings in at a whopping 17 counts, which is, admittedly, a large improvement from the 50 counts jammed into her Third Amended Complaint. It's still a lot. Kitchen sink pleadings are not nearly as convincing, useful, or successful as their filers think. They are inconsistent with Rule 1 (and often Rule 11), unnecessarily jam up the docket, slow the proceedings to a snail's pace, and obscure any meritorious claims or defenses among worthless clutter. *See Pursley v. City of Rockford*, No. 18-cv-50040, 2024 U.S. Dist. LEXIS 4205, at *4 n.1 (N.D. Ill. Mar. 11, 2024); *Moore v. Lauer*, No. 22-cv-50354, 2024 U.S. Dist. LEXIS 11673, at *2-3 (N.D. Ill. Jan. 23, 2024); *see also Lesorgen v. Mondelez Glob.*, LLC, 674 F. Supp. 3d 459, 464 (N.D. Ill. 2023). Counsel is encouraged to plead his complaints more thoughtfully in the future, and to be *extremely* cautious about future frivolous filings, such as his ill-advised battery claim.

disorganized pleadings hand over fist. But in truth, that time isn't so much "saved" as reallocated to the Court, with the hope, wish, or expectation that it will do Counsel's work for him.

District courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, *repeated failure to cure deficiencies*, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir.2008) (emphasis added). Despite three prior opportunities to amend, Doe's pleadings show no signs of improvement. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013) ("But in court, as in baseball, three strikes and you're out."). She has neither requested an opportunity to amend her complaint nor proposed any amendments that would address the Complaint's shortcomings identified in this order. So, Doe's Fourth Amended Complaint is dismissed with prejudice as to those claims identified in this order.

## III. Conclusion

For the reasons explained above, the Defendants' Motion to Dismiss Doe's Fourth Amended Complaint [92] is granted in part and denied in part. Count XV adequately states a Title IX claim against the District, and Counts II, VII, and XVI remain, pending the resolution of Hutchinson's criminal case. All other counts are dismissed with prejudice.

Entered: November 13, 2024

By: _____

Iain D. Johnston
U.S. District Judge

30